**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LYNN BOWLES n/k/a
LYNN PRICE,**

    **Plaintiff,**

vs.                                                                              Case No.: 8:12-CV-632-T-23EAJ

**CAROLYN W. COLVIN
Commissioner of Social
Security Administration,[1]**

    **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

Plaintiff brings this action pursuant to the Social Security Act ("the Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI").

After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the administrative record, and the pleadings and memoranda submitted by the parties in this case, the undersigned recommends that the Commissioner's decision be affirmed and this case dismissed.[2]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with

---

[1] The current acting Commissioner of Social Security, Carolyn W. Colvin, is substituted for Michael J. Astrue, former Commissioner of Social Security. See Fed. R. Civ. P. 25(d).

[2] The District Judge referred this matter to the undersigned for consideration and a Report and Recommendation. See Local Rule 6.01(a), M.D. Fla.

applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

### I. Background

On July 7, 2009, Plaintiff filed an application for SSI, alleging disability beginning June 11, 2008. (T 113) Plaintiff's application was denied initially and upon reconsideration, and a hearing was held on February 2, 2011. (T 31, 71, 73) Forty-seven years old at the time of the hearing, Plaintiff has a tenth-grade education and no past relevant work experience. (T 33-34)

On April 27, 2011, the ALJ found Plaintiff disabled from June 11, 2008 to January 24, 2010, but not disabled beginning January 25, 2010. (T 19, 24) Plaintiff's severe impairments included status post remote right lower extremity surgeries and right knee surgery with residual degenerative joint disease, status post remote right shoulder rotator cuff repair, and two status post cervical spine fusions, but these impairments did not meet or medically equal one of the impairments listed in C.F.R. Part 404, Subpart P, App. 1. (T 16-17, 20)

Regarding the period of disability from June 11, 2008 to January 24, 2010, Plaintiff had the

residual functional capacity ("RFC") to perform sedentary work with the following restrictions: Plaintiff could stand and walk for three to four hours total in an eight-hour workday, could sit for up to twenty minutes at a time, could walk up to one block, could occasionally climb, balance, stoop, kneel, crawl and crouch, but must avoid climbing ladders, scaffolds, ropes, extreme vibrations, and unprotected heights. (Id.) Plaintiff was limited to frequent feeling with the palms of both hands, although she had no limitations in dexterity and grabbing with her dominant right hand and no limitations with her non-dominant left hand. (Id.) She also was limited to reaching overhead frequently with the right upper extremity and no more than occasional operation of foot controls with the lower extremities. (Id.) Plaintiff needed to nap for twenty minutes to one hour up to two to three times a day. (Id.) Based on vocational expert ("VE") testimony, the ALJ found no jobs existing in significant numbers in the national economy that Plaintiff could perform. (T 18-19) Accordingly, the ALJ concluded that Plaintiff was disabled from June 11, 2008 to January 24, 2010. (Id.)

For the period beginning January 25, 2012, Plaintiff's RFC changed in the following respects: she did not need to nap twenty minutes to one hour two to three times a day and she was no longer limited to sitting up to twenty minutes at a time and walking up to one block. (T 20) Based on VE testimony, the ALJ found Plaintiff capable of performing jobs available in significant numbers in the national economy such as document preparer, charge account clerk, and order clerk. (T 24) Accordingly, the ALJ concluded that Plaintiff was not disabled beginning January 25, 2010. (Id.)

On January 27, 2012, the Appeals Council denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (T 1)

The medical and other evidence has been reviewed in the ALJ's decision and will not be

repeated here except as necessary to address the issues presented.

Plaintiff claims that the ALJ erred by: (1) finding that there was a medical improvement in Plaintiff's condition beginning January 25, 2010; (2) determining that Plaintiff's impairments did not meet or medically equal Listing 1.03; and (3) failing to properly evaluate Plaintiff's subjective complaints.

## II. Analysis

Plaintiff suffers from residuals of an accident at age fifteen involving her right leg from the knee down and osteomyelitis in the right leg. (T 16) She has had right knee surgery three times, multiple surgeries on the right lower extremity secondary to shattered tibia and fibula bones, migraines, burning sensation in the bilateral ankles, blurry vision, hand pain, depression with severe anxiety, and panic attacks. (Id.) Plaintiff tore the rotator cuff in her right shoulder by lifting weights and underwent a right shoulder orthoscopy more than ten years ago. (T 17, 37, 40) She had cervical spine surgery in 2000 and June 2008. (T 17, 35-36)

On June 21, 2008, David McKalip, M.D. ("Dr. McKalip") saw Plaintiff for a follow-up after performing a C3-C4 anterior cervical diskectomy and fusion for a large acute herniated disk and myelopathy. (T 233) Dr. McKalip noted that Plaintiff's wound healed well. (Id.) She was doing well, had five out of five hand strength throughout with good hand intrinsic function, had a normal gait, and took Advil for minimal pain, although she did have some pain in her right shoulder, neck, and into the upper arm at night. (Id.)

Plaintiff went to the emergency room on May 7, 2009 complaining of kidney infection, high white blood cell count, chronic neck pain, and some numbness in her hands and fingers. (T 289) David Hughes, M.D. ("Dr. Hughes") observed that Plaintiff had an normal gait, stance, and motor strength. (T 291) A May 22, 2009 MRI of the cervical spine showed marked improvement in the

4

appearance of cervical stenosis at the C3-C4 level, but some residual hyperintensity probably indicating myelomalacia. (T 16, 308-09)

On January 25, 2010, Robert Shefsky, M.D. ("Dr. Shefsky") conducted a consultative physical evaluation of Plaintiff. (T 336) Dr. Shefsky observed that Plaintiff was in no acute distress, her gait was moderately antalgic on the right leg, and she could not walk on her heels and toes or do a full squat. (T 367) Plaintiff wore a knee immobilizer resulting in a less antalgic gait. (Id.)[3] Plaintiff could get on and off the exam table and could rise from her chair without much difficulty. (Id.) Plaintiff had full range of motion of her shoulders, elbows, forearms, wrists, hips, left knee and ankles bilaterally. (Id.) She could flex her right knee to about sixty degrees. (Id.) Plaintiff had five out of five strength in the upper extremities and left lower extremity and four out of five strength in the right lower extremity. (Id.) Joints were stable and nontender, but there was an effusion in the right knee. (Id.) Plaintiff's deep tendon reflexes were physiologic and equal in the upper and lower extremities, and she had no motor deficits. (Id.) Plaintiff had decreased sensation to light touch over the palmar surfaces of both hands, but she had intact hand and finger dexterity and five out of five grip strength bilaterally. (Id.) Dr. Shefsky diagnosed Plaintiff with right leg pain, neck pain by history, back pain by history, and osteomyelitis in the right leg by history. (Id.)

Non-examiner Thomas Renny, D.O. ("Dr. Renny") completed a physical RFC assessment on February 8, 2010. (T 373-80) Dr. Renny opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently. (T 374) She could stand or walk for a total of at least two hours in an eight-hour workday, sit for a total of six hours in an eight-hour workday, and had no push or pull limitations. (Id.) Dr. Renny limited Plaintiff to performing light work involving no

---

[3] Dr. Shefsky stated that Plaintiff reported using the knee immobilizer for weight-bearing. (T 367)

5

climbing of ladders, ropes, or scaffolds; only occasional stooping, kneeling, crouching, or crawling; and no concentrated exposure to vibration. (T 375) Dr. Renny found no manipulative limitations. (T 376)

On February 11, 2010, Plaintiff underwent a consultative psychological examination by Linda Appenfeldt, Ph.D., ("Dr. Appenfeldt"). (T 382-85) Dr. Appenfeldt noted that Plaintiff's gait, stance, and ambulation were unremarkable and that she ambulated without the use of an assistive device. (T 382) Dr. Appenfeldt opined that Plaintiff could perform work-related mental activities involving understanding, memory, sustained concentration and persistence, social interaction, and adaptation. (T 384) She also found that Plaintiff could sit, stand, walk, handle objects, hear, speak, and travel. (Id.)

**I.   Medical Improvement**

Contending that substantial evidence does not support the finding that Plaintiff had medical improvement beginning January 25, 2010, Plaintiff also states that the ALJ erred by crediting non-examiner Dr. Renny's assessment over treating physicians' opinions and failing to assign weight to the opinion of Dr. Shefsky.

A recipient of disability benefits is no longer entitled to benefits upon a finding that substantial evidence demonstrates that: (1) "there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work);" and (2) "the individual is now able to engage in substantial gainful activity." 42 U.S.C. § 423(f)(1) (2004). Medical improvement is "any decrease in the medical severity of [a claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled . . . ." 20 C.F.R. § 404.1594(b)(1) (2012). "A determination that there has been a decrease in medical severity must be based on

6

changes (improvement) in the symptoms, signs, and/or laboratory findings associated with [the claimant's] impairment(s) . . . ." Id.  Evidence of improvement is necessary to support a termination of benefits. See Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984).

The point of comparison for determining if there has been improvement is "the time of the most recent favorable decision." 20 C.F.R. § 404.1594(b)(7).  Further, the ALJ must evaluate the prior medical evidence of disability. Williams v. Apfel, 73 F. Supp. 2d 1325, 1337 (M.D. Fla. 1999) (citation omitted). Without a comparison to the current condition, no adequate finding of improvement can be rendered. Id.  Merely referring to the current evidence without performing a comparison is insufficient. McAulay v. Heckler, 749 F.2d 1500, 1501 (11th Cir. 1985).

Upon introducing evidence that his or her condition has not changed since a prior disability determination, a plaintiff is entitled to a presumption of continuing disability. Williams, 73 F. Supp. 2d at 1337 (citation omitted). The Commissioner must demonstrate that sufficient medical improvement has enabled the plaintiff to undertake gainful activity. Id. (citation omitted).

The ALJ concluded that as of January 25, 2010, Plaintiff experienced medical improvement in her impairments and that the improvement was related to her ability to work. (T 20, 24)  Finding that "examinations demonstrated less severe abnormalities and [Plaintiff's] work restrictions were reduced, heightening her functional ability to work," the ALJ concluded  that Plaintiff recovered from her last cervical surgery to the extent that she was limited to the second RFC beginning January 25, 2010. (T 20)  As of January 25, 2010, Plaintiff no longer needed to nap twenty minutes to an hour up to two to three times a day and was no longer limited to sitting up to twenty minutes at a time and walking up to one block. (Id.)  Without these limitations, Plaintiff could perform a significant number of jobs in the national economy and was not disabled. (T 24)

Substantial evidence supports the ALJ's finding that Plaintiff experienced medical

improvement as of January 25, 2010.  On that date, Dr. Shefsky opined that Plaintiff's gait was moderately antalgic on the right leg, but less antalgic when she was wearing a knee mobilizer. (T 23, 367)  Plaintiff did not need any help changing or getting on and off of the exam table and was able to rise from the chair without much difficulty. (T 368)  Plaintiff had full strength in the upper extremities and lower left extremity, four out of five strength in her lower right extremity, and no motor deficits or muscle atrophy. (Id.)  Although Dr. Shefsky noted decreased range of motion in the cervical and lumbar spine, Plaintiff had normal spine function, grip strength, and manipulation. (T 23, 368)  On February 8, 2010, Dr. Renny opined that Plaintiff could stand and walk for two hours in an eight-hour workday, could sit for six hours in an eight-hour workday, had no manipulative, visual, or communicative limitations, and had an unlimited ability to push and pull. (Id.)  Plaintiff could not climb ladders, ropes or scaffolds, could only occasionally stoop, kneel, crouch, or crawl, and must avoid concentrated exposure to vibration. (T 374-375, 377)  Dr. Appenfeldt observed on February 11, 2010 that Plaintiff's gait, stance, and ambulation were unremarkable; Plaintiff ambulated without an assistive device. (T 382)

  Although Plaintiff argues that the ALJ erred by crediting non-examiner Dr. Renny's assessment over treating physicians' opinions, she fails to identify any opinions of treating physicians in the record which the ALJ failed to evaluate relevant to her condition after January 24, 2010.  The ALJ did not err in considering the opinion evidence of record nor did the ALJ substitute his opinion for any treating physician's opinion.  Although Dr. Renny was a non-examining physician, the ALJ found that his opinion deserved some weight since he reviewed the file and had expertise in the field. (T 20)  In concluding that Plaintiff experienced medical improvement, the ALJ considered Plaintiff's testimony, reports from third-party Jim Dillon ("Dillon"), who used to live

with Plaintiff,[4] the medical record, Dr. Shefsky's examination findings, medical and laboratory findings, and Plaintiff's appearance and demeanor. (T 21-23)

Moreover, Dr. Shefsky's findings do not contradict the ALJ's RFC assessment, but, in fact, support it. See Caldwell v. Barnhart, 261 F. App'x 188, 190 (11th Cir. 2008) (per curiam) (unpublished) (holding that the ALJ's failure to discuss weight given to examining physician's findings constituted harmless error where opinion did not contradict the ALJ's findings).[5] Accordingly, remand is not warranted on these issues.

## II.   Listing 1.03

Plaintiff contends that her impairments met or equaled Listing 1.03 based on the ALJ's finding that Plaintiff could walk up to one block from June 11, 2008 to January 24, 2010 and her testimony that she could not walk on uneven ground.

To "meet" a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citations omitted). To "equal" a Listing, the medical findings must be "at least equal in severity and duration to the listed findings." Id.  Plaintiff bears the burden of showing that her impairments meet or equal a listed impairment. Doughty v. Apfel, 245 F. 3d 1274, 1278 (11th Cir. 2001).

Listing 1.03 requires:

Reconstructive surgery of surgical arthrodesis of a major-weight bearing joint, with

---

[4] Dillon reported that Plaintiff needed help getting dressed and with her personal care, she could not shop, prepare meals, or perform household chores on a consistent basis, he had to remind her to take her medication, and she had a serious alcohol problem. (T 19, 22, 161, 184-86)

[5] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36–2.

>inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset.

20 C.F.R. pt. 404, subpt. P, app. 1 § 1.03.

Inability to ambulate effectively is defined as:

>[A]n extreme limitation of the ability to walk; ie., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

Id. at § 1.00B(2)(b).

Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two canes" and "the inability to walk a block at a reasonable pace on rough or uneven surfaces." Id. at § 1.00B(2)(b)(2). While pain or other symptoms may be an important factor contributing to functional loss, in order for pain or other symptoms to be found to affect an individual's ability to perform basic work activities, medical signs or laboratory findings must show the existence of a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms. Id. at § 1.00B(2)(d).

For the entire period at issue, the ALJ determined that Plaintiff's impairments did not meet or equal a listing, including Listing 1.03. (T 17, 20) Substantial evidence supports this conclusion. In July 2008, Dr. McKalip found that Plaintiff had a normal gait. (T 233) Dr. Hughes also noted a normal gait and stance in May 2009. (T 291) In January 2010, Dr. Shefsky observed that Plaintiff's gait was moderately antalgic on the right leg and less antalgic when she was wearing a knee mobilizer. (T 367) On February 11, 2010, Dr. Appenfeldt found that Plaintiff's gait, stance, and ambulation were unremarkable and that she ambulated without the use of an assistive device.

(T 382)[6] On February 8, 2010, Dr. Renny opined that Plaintiff could perform a range of light work, noting that she ambulated effectively without a handheld assistive device. (T 374)

While Plaintiff cites her testimony that she could not walk on uneven ground (T 53), the ALJ implicitly discredited this testimony in not including a limitation on walking on uneven surfaces in the RFC assessment. (T 17) The RFC limitation on walking up to one block from June 11, 2008 to January 24, 2010 does not equate to an inability to walk a block at a reasonable pace on rough or uneven surfaces. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B(2)(b)(2). As there is substantial evidence that Plaintiff did not experience an inability to ambulate effectively, Plaintiff has not shown that her medical impairments met or equaled Listing 1.03.[7]

## III.    Plaintiff's Subjective Complaints

The Eleventh Circuit has established a three-part "pain standard" to use when a claimant attempts to establish disability through testimony of pain or other subjective symptoms. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). A plaintiff must show: (1) objective medical evidence of an underlying medical condition; and either (2) the objective medical evidence substantiates the severity of the pain from the condition; or (3) the objectively determined medical condition is of sufficient severity that it would be reasonably expected to produce the pain alleged. Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986) (per curiam).

Where an ALJ declines to credit a claimant's testimony regarding subjective complaints, the ALJ must "articulate explicit and adequate reasons for doing so." Foote v. Chater, 67 F.3d 1553,

---

[6] Although Dr. Appenfeldt is a psychologist, her observations of Plaintiff's physical condition are not irrelevant.

[7] Plaintiff's use of a knee immobilizer does not meet the definition of Listing 1.03 which refers to a "hand held assistive device."

11

1561-62 (11th Cir. 1995) (per curiam). A clearly articulated credibility finding that is substantially supported by the record will not be overturned. Id. at 1562 (citation omitted). A lack of an explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. Id. (citation omitted).

While Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, that ALJ found her statements concerning the intensity, persistence and limiting effects of those symptoms not credible beginning January 25, 2010 to the extent they were inconsistent with the RFC assessment.[8] (T 22) The ALJ indicated that Plaintiff had exaggerated her symptoms and restrictions, which were not supported by the medical signs and laboratory findings to the level of disability alleged after January 25, 2010. (T 23)

Although Plaintiff had a moderately antalgic gait on right leg, decreased range of motion of right knee, and right knee effusion, Dr. Shefsky observed that Plaintiff had a normal stance, had improved ambulation with a right knee device, and had normal spine function, grip strength, and manipulation. (T 23, 366-369)  Plaintiff reported to Dr. Shefsky that she can shower and dress without assistance and that her neighbor helps her with housework. (T 22, 367) Despite Plaintiff's reports that she can sit for only fifteen to twenty minutes at a time, the ALJ observed that she remained seated at the hearing for approximately thirty minutes without significant difficulty. (T 23) Plaintiff used no assistive device, her gait had a very slight limp, and at the end of the hearing, Plaintiff stood up and walked out of the courtroom with a slight limp on the right. (Id.) The ALJ could consider Plaintiff's demeanor at the hearing as one factor, among other evidence, in evaluating the credibility of her allegations. See Marcia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987).

---

[8] The ALJ explicitly referred to the proper standard for evaluating a Plaintiff's subjective symptoms. (T 21)

As there was substantial evidence to support the ALJ's credibility determination, Plaintiff's argument is without merit. See Allen v. Sullivan, 880 F.2d 1200, 1202-03 (11th Cir. 1989) (per curiam).

**Conclusion**

The ALJ's decision is supported by substantial evidence and the proper legal principles. The decision of the Commissioner should therefore be affirmed.[9]

Accordingly and upon consideration, it is **RECOMMENDED** that:

(1) The decision of the Commissioner be **AFFIRMED** and the case **DISMISSED**, with each party to bear its own costs and expenses; and

(2) The Clerk of Court enter final judgment in favor of Defendant consistent with 42 U.S.C. §§ 405(g) and 1383(c)(3).

**Date: July 19, 2013**

ELIZABETH A JENKINS
United States Magistrate Judge

---

[9] The undersigned is compelled to note that Plaintiff's memorandum of law sometimes refers to the ALJ's actions in the future tense, rather than past tense. (Dkt. 10 at 2, 5) Yet, in other instances, counsel properly uses the past tense in referring to the ALJ's actions. (Dkt. 10 at 2-3) These inconsistencies, while not prejudicial to Plaintiff's legal arguments, are distracting.

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).